IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
September 11, 2007 Session

**JAMES DAVIS v. STATE OF TENNESSEE**

**Direct Appeal from the Circuit Court for Tipton County
No. 4520      Joseph H. Walker, III, Judge**

_____

**No. W2006-02708-CCA-R3-PC  - Filed December 21, 2007**

_____

The petitioner, James Davis, was convicted by a Tipton County jury of felony murder and aggravated robbery and received consecutive sentences of life without parole and twenty years.  This court affirmed the petitioner's convictions on direct appeal.  State v. James Robert Davis, No. W2003-02362-CCA-R3-CD, 2005 WL 452569, at *1 (Tenn. Crim. App. Feb. 24, 2005), perm. to appeal denied (Tenn. Aug. 22, 2005).  In 2006, the petitioner filed a petition for post-conviction relief, alleging that he received ineffective assistance of counsel at trial.  Following an evidentiary hearing, the post-conviction court dismissed the petition.  After reviewing the record and finding no error, we affirm that order.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the court, in which DAVID H. WELLES and JOHN EVERETT WILLIAMS, JJ., joined.

Matthew Ian John, Memphis, Tennessee, for the appellant, James Davis.

Robert E. Cooper, Jr., Attorney General and Reporter; J. Ross Dyer, Assistant Attorney General; D. Michael Dunavant, District Attorney General; and James Walter Freeland, Jr., Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**FACTS**

This court set out the relevant factual background in its opinion affirming the petitioner's convictions on direct appeal:

On Sunday, September 22, 2002, Kathryn Glass went to church while her husband, eighty-five-year-old Edward Glass, the victim in this case, stayed at their

home in Atoka, Tennessee on Wilkinsville Road in Tipton County. Shortly before noon, the [petitioner] and LaJune Smith pulled into the victim's driveway in a light brown or champagne-colored extended cab pick-up truck. The victim was outside of his home at the time and walked toward the truck to see what the appellant needed. The [petitioner] got out of the driver's side of the truck and asked the victim for change for a five dollar bill. As the victim removed his wallet, the [petitioner] hit him in the face with his fist, knocking the victim to the ground. The [petitioner] grabbed the victim's wallet and left in the truck. The wallet was found a short time later on the side of the road near the victim's home.

Michael Lantrip, the victim's son-in-law, was mowing the lawn next door to the victim's residence when he saw the truck pull into the driveway. Mr. Lantrip did not see the [petitioner] strike the victim. Mr. Lantrip later saw the victim staggering toward him, looking dazed. The victim was bleeding and had a large gash on the side of his face. Mr. Lantrip took the victim inside his home and called 911. Mr. Lantrip also notified several of the victim's children about the incident.

Deputy Robert Akers of the Tipton County Sheriff's Department responded to the 911 call. When he arrived, medical personnel were already on the scene and the victim's wife had arrived home from church. Deputy Akers interviewed the victim, noting that he had a facial injury and blood on his coveralls. The victim described the incident to Deputy Akers and gave a description of the assailant. Because the victim could not read or write, his daughter, Jean Ballard, wrote out the victim's responses to Deputy Akers' questions. Mrs. Glass also witnessed the interview and transcription of the statement. Mrs. Glass signed her husband's name to the written statement upon its completion.

The victim declined medical treatment at his residence. Shortly after the ambulance left, the victim began to feel worse, complaining of a headache and nausea. A second ambulance was called to the victim's residence and the victim was taken to the hospital where he lost consciousness, slipped into a coma, and died three days later. Dr. O.C. Smith performed an autopsy on the victim and determined that the cause of death was blunt trauma to the head which caused an accumulation of blood inside the skull as well as swelling of the brain.

On September 26, 2002, LaJune Smith, the [petitioner's] girlfriend, was arrested and charged with felony murder and aggravated robbery. She gave a statement in which she implicated her boyfriend, the [petitioner]. The [petitioner] was subsequently arrested and, at the time of his arrest, complained of an injury to his hand.

In November of 2002, the [petitioner] was indicted by the Tipton County Grand Jury on one count of felony murder and one count of aggravated robbery. The

-2-

[petitioner] was held at the Tipton County Correctional Facility prior to trial. While incarcerated, the [petitioner] made several phone calls to his mother during which he made incriminating statements about the incident. The telephone calls were monitored and recorded pursuant to the Sheriff's Department's policy. All prisoners are notified of the policy prior to each telephone call by a recorded message.

After a jury trial, the [petitioner] was convicted of felony murder and aggravated robbery. He was sentenced by the jury to life without the possibility of parole on the felony murder conviction and by the trial court to a twenty-year sentence on the aggravated robbery conviction, to be served consecutively to the life sentence.

James Robert Davis, 2005 WL 452569, at *1-2.

The petitioner challenges the effectiveness of his trial counsel's assistance. We derive his allegations directly from his amended petition for post-conviction relief:

1. Petitioner alleges the counsel failed to conduct a proper metal [sic] evaluation to determine his competency to stand trial. In doing so, counsel disregarded the Petitioner's significant and well documented substance-abuse problem which may have rendered him incompetent [to stand trial].

2. Petitioner alleges that he was denied his rights under the Constitution of the State of Tennessee and the United States Constitution to effective assistance of counsel during the stages of his trial. Petitioner alleges that trial defense counsel's assistance was ineffective because he did not inform the Petitioner of any of the possible defenses he may have used at trial.

3. Petitioner further alleges that he was denied his right to effective assistance of counsel on information and belief that his court-appointed trial counsel may not have investigated the facts properly by not interviewing any potential witnesses on behalf of the petitioner and failed to properly cross-examine certain witnesses called by the State.

4. Petitioner also alleges trial counsel had knowledge of damaging taped conversations as early as three months before the trial and never filed pre-trial motions to suppress the extremely prejudicial taped phone conversations. Counsel was aware of how prejudicial these tapes were and failed to file the proper Interlocutory Appeals. Petitioner also alleges that counsel also allowed the state to play the detrimental conversations during the trial to the jury. The Trial Counsel did not properly object to these prejudicial tactics used by the State. These tapes were only used to prejudice the defendant and influence the jury.

-3-

5. The Petitioner alleges that counsel allowed the State to make transcripts of the taped conversations without properly reviewing them or allowing the Petitioner to review them. Counsel also failed to prepare a separate set of transcripts for the Defense before the transcripts were read during the trial.

6. Petitioner further alleges that counsel conducted a poor investigation of the victim's medical records by questioning none of the inconsistencies that existed. Petitioner also asserts that trial counsel made ineffective use of the medical doctor who was to review the autopsy and medical reports of the victim.

7. Petitioner alleges that he was denied his rights under the Constitution of the State of Tennessee and the United States Constitution to effective assistance of counsel during the stages of his trial because the Petitioner alleges that Trial defense counsel never informed him of the range of sentencing and to whether or not he would be eligible for a parole release date.

8. Petitioner further alleges that he was denied his right to effective assistance of counsel on information and belief that his court-appointed trial counsel may not have investigated the facts of the case thoroughly.

9. Petitioner also alleges counsel failed to investigate or review the criminal histories of any witnesses called by the State thereby leaving their credibility in question.

10. The Plaintiff [sic] further alleges that his court-appointed trial counsel failed to keep him informed as to the developments of his case. The Plaintiff [sic] contends that contact was limited and left him without a clear understanding of the proceedings and an inability [sic] to assist in his own defense.

The petitioner and his trial counsel, who were the only witnesses to testify at the evidentiary hearing, disagreed in most aspects of their testimony. The majority of the petitioner's testimony was a recitation of various actions he wanted trial counsel to take, which he did not, these complaints accompanied by the petitioner's claims that, had counsel taken the desired actions, the outcome of the trial might have been different. While expressing his beliefs in this regard, the petitioner presented no proof to support them, neither calling to the hearing any of the witnesses whom he believes should have testified for him at the trial nor introducing any records which counsel might have utilized at the trial. The post-conviction court concluded that the petitioner had failed to show either that counsel was ineffective or that he was prejudiced by counsel's actions; and, as we will explain, we agree.

At the evidentiary hearing, the petitioner testified that trial counsel gave him a copy of the victim's statements, the autopsy report, and an audiotaped recording of a conversation between the petitioner and his mother that took place while the petitioner was in jail awaiting trial. The petitioner said that trial counsel played the audiotape for him, and it was difficult to understand. The petitioner

testified that trial counsel met with him briefly to discuss the autopsy report and told him that he planned to petition the trial court for funds to hire a pathologist to independently evaluate the victim's cause of death. According to the petitioner, counsel never showed him any written conclusions or reports of the pathologist but later explained that the pathologist would not be helpful to his defense. The petitioner said he asked trial counsel for police reports and additional information from the medical personnel who assisted the victim, but did not receive those materials in time to use them to prepare his defense. However, he admitted that he did not ask for the police reports until shortly before trial. None of these records were put into evidence at the evidentiary hearing.

The petitioner said that he promptly informed trial counsel that he had a substance abuse problem and had been diagnosed with psychological disorders. He signed a medical waiver allowing counsel to investigate his medical history. To the petitioner's knowledge, trial counsel never spoke with any of the psychologists, psychiatrists, or physicians who had treated him.

The petitioner testified that he did discuss defenses and trial strategies with counsel. He said that counsel told him he was going to hire a private investigator to help explore some leads, but that to his knowledge an investigator was never hired. The petitioner testified that trial counsel never discussed with him sentencing options or potential witnesses to be called at the sentencing hearing. He said that he never approved counsel's decision not to put on proof at sentencing and that he would have chosen to present proof if consulted. However, the petitioner did not present at the hearing any witnesses or other proof which, in his view, would have benefitted him at sentencing.

Trial counsel testified that he did not ask for an evaluation of the petitioner's competency to stand trial because the petitioner was quite active in his defense and appeared to be competent. Although he was aware of the petitioner's substance abuse problem, trial counsel did not believe this warranted a mental evaluation.

Trial counsel agreed that he discussed potential defenses with the petitioner and said he employed every possible defense of which he was aware. Trial counsel's strategy was to challenge whether the petitioner's actions were the criminally proximate cause of the victim's death, and to attempt to suppress damaging statements made by the victim and the petitioner. Counsel remembered discussing potential alibi defenses with the petitioner but said he could not present such a defense in light of the jailhouse audiotapes on which the petitioner admits his presence at the scene. He was sure that he advised the petitioner of his sentencing range and whether he would be eligible for parole. At the evidentiary hearing, the petitioner did not identify specific defenses he believes counsel should have discussed with him.

Counsel acknowledged that he did not question every potential witness. He reasoned that because many of the witnesses in this case were family members of the victim, it was better to question them for the first time under oath, so they would not have a chance to think about the questions being asked and reformulate their responses.

Trial counsel testified that he was aware of the jailhouse audiotapes well in advance of trial and that he listened to the audiotapes with the petitioner. He said he filed pretrial motions to suppress the tapes but did not consider taking an interlocutory appeal from the trial court's denial of those motions. He thought that the first time he saw the State's transcript of the tapes was when the State presented it at trial. Counsel did not prepare his own transcript because the tapes were difficult to understand in certain areas, and he believed that clarifying them would only increase their inculpatory effect. On redirect examination, he said he did not remember the petitioner's ever claiming that it was not his voice on the audiotapes. The petitioner presented neither the tapes nor the transcripts at the hearing, nor proof that he had not, as he claimed in his testimony, been in the cell block from which the telephone calls originated.

Regarding the allegation of ineffective use of the pathologist hired to examine the medical records and the autopsy report, trial counsel said that he decided against using the pathologist's testimony after learning that he agreed with the autopsy report. He thought this would only bolster the State's case against the petitioner. He did not remember seeing anything in the medical records that appeared inconsistent with the State's theory of the case. At the hearing, the petitioner presented neither records nor witnesses to support his claims regarding the pathologist.

Trial counsel acknowledged that he did not investigate the criminal backgrounds of many of the State's witnesses. He did not do so because he felt he would be unable to use their criminal records at trial, since many of the witnesses were neighbors or relatives of the victim. He was concerned that the jury would construe any inquiry into the criminal history of such witnesses as an unjust attack on one who had recently experienced a tragedy. At the hearing, the petitioner did not present proof of what the results would have been had counsel investigated the records of the witnesses.

Counsel believed that he kept the petitioner informed of the developments of his case. His records showed that he met with the petitioner prior to trial between eight and twelve times, and sent him several letters. He remembered giving the petitioner some discovery materials and made his best effort to forward such materials as he received them. He denied the petitioner's allegation that, prior to trial, they had met for a total of only fifteen minutes.

On cross-examination, trial counsel testified that he learned that the petitioner previously had been treated at the Memphis Mental Health Hospital and the Professional Counseling Center in Covington. He remembered requesting permission from the petitioner to investigate his medical records but did not recall actually reviewing the records. Counsel did not introduce the petitioner's substance abuse problem at trial or sentencing because, in his words, "being a crack head has never helped anybody's defense."

Trial counsel agreed that he presented no proof at the sentencing hearing but could not recall whether he discussed this decision with the petitioner. He did not call the petitioner to the stand because he believed the petitioner would not have been a good witness. He said he advised the

petitioner not to present proof at sentencing, but that the ultimate decision on that issue was the petitioner's.

Trial counsel could not remember whether he attempted to obtain information from the medical personnel who treated the victim at the scene of the crime. He did not remember talking to them or getting statements from them and did not call any of them as witnesses. He could not recall obtaining medical records from Methodist Hospital–North, where the victim was treated. At the evidentiary hearing, the petitioner did not present any of these records or call to testify medical personnel who had assisted the victim.

After reviewing in detail and making findings as to the petitioner's individual complaints, the post-conviction court dismissed the petition, concluding that the petitioner had failed to show either that counsel had been deficient or that he had been prejudiced by counsel's actions:

> The Court finds that petitioner has failed to establish the factual allegations contained in his petition by clear and convincing evidence. Tenn. Code Ann. § 40-30-110. The petitioner has not shown that (a) the services rendered by trial counsel were deficient and (b) the deficient performance was prejudicial. The petitioner has not shown that the services rendered or the advice given was below the range of competence demanded of attorneys in criminal cases. The petitioner has not shown that there is a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different.

## ANALYSIS

On appeal, the petitioner renews each claim of ineffective assistance of counsel set forth in his amended petition for post-conviction relief. The State responds that the petitioner has waived several claims by failing to support them with appropriate citations and argument and that the record and the law do not support his remaining claims.

Post-conviction relief "shall be granted when the conviction or sentence is void or voidable because of the abridgment of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." Tenn. Code Ann. § 40-30-103 (2006). The petitioner bears the burden of proving factual allegations by clear and convincing evidence. Tenn. Code Ann. § 40-30-110(f). When an evidentiary hearing is held in the post-conviction setting, the findings of fact made by the court are conclusive on appeal unless the evidence preponderates against them. See Wiley v. State, 183 S.W.3d 317, 325 (Tenn. 2006). When reviewing factual issues, the appellate court will not reweigh the evidence and will instead defer to the trial court's findings as to the credibility of witnesses or the weight of their testimony. Id. However, review of a trial court's application of the law to the facts of the case is *de novo*, with no presumption of correctness. See Ruff v. State, 978 S.W.2d 95, 96 (Tenn. 1998). The issues of deficient performance of counsel and possible prejudice to the defense are mixed questions of law and fact and, thus, subject to *de novo*

review by the appellate court.  See Wiley, 183 S.W.3d at 325; State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999).

The right to effective assistance of counsel is safeguarded by the Constitutions of both the United States and the State of Tennessee.  See U.S. Const. Amend. VI; Tenn. Const. Art. I, § 9.  In order to determine the competence of counsel, Tennessee courts have applied standards developed in federal case law.  See State v. Taylor, 968 S.W.2d 900, 905 (Tenn. Crim. App. 1997) (noting that the same standard for determining ineffective assistance of counsel that is applied in federal cases also applies in Tennessee).  The United States Supreme Court articulated the standard in Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052 (1984), which is widely accepted as the appropriate standard for all claims of a convicted petitioner that counsel's assistance was defective.  The standard is firmly grounded in the belief that counsel plays a role that is "critical to the ability of the adversarial system to produce just results."  Id. at 685, 104 S. Ct. at 2063. The Strickland standard is a two-prong test:

> First, the defendant must show that counsel's performance was deficient.  This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.  Second, the defendant must show that the deficient performance prejudiced the defense.  This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

Id. at 687, 104 S. Ct. at 2064.  The Strickland Court further explained the meaning of "deficient performance" in the first prong of the test in the following way:

> In any case presenting an ineffectiveness claim, the performance inquiry must be whether counsel's assistance was reasonable considering all the circumstances. . . . No particular set of detailed rules for counsel's conduct can satisfactorily take account of the variety of circumstances faced by defense counsel or the range of legitimate decisions regarding how best to represent a criminal defendant.

Id. at 688-89, 104 S. Ct. at 2065.  The petitioner must establish "that counsel's representation fell below an objective standard of reasonableness under prevailing professional norms." House v. State, 44 S.W.3d 508, 515 (Tenn. 2001) (citing Goad v. State, 938 S.W.2d 363, 369 (Tenn. 1996)).

As for the prejudice prong of the test, the Strickland Court stated:  "The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."  466 U.S. at 694, 104 S. Ct. at 2068; see also Overton v. State, 874 S.W.2d 6, 11 (Tenn. 1994) (concluding that petitioner failed to establish that "there is a reasonable probability that, but for counsel's errors, the outcome of the proceedings would have been different").  To satisfy the prejudice requirement of Strickland when alleging that counsel was ineffective for failing to offer testimony from a favorable witness, the post-conviction petitioner must

-8-

"(1) produce the witness at his post-conviction hearing; (2) show that through reasonable investigation, trial counsel could have located the witness; and (3) elicit both favorable and material testimony from the witness." Denton v. State, 945 S.W.2d 793, 802-03 (Tenn. Crim. App. 1996) (citing Black v. State, 794 S.W.2d 752, 757 (Tenn. Crim. App. 1990)).

The reviewing court must indulge a strong presumption that the conduct of counsel falls within the range of reasonable professional assistance, see Strickland, 466 U.S. at 690, 104 S. Ct. at 2066, and may not second-guess the tactical and strategic choices made by trial counsel unless those choices were uninformed because of inadequate preparation. See Hellard v. State, 629 S.W.2d 4, 9 (Tenn. 1982). The fact that a strategy or tactic failed or hurt the defense does not alone support the claim of ineffective assistance of counsel. See Thompson v. State, 958 S.W.2d 156, 165 (Tenn. Crim. App. 1997). Finally, a person charged with a criminal offense is not entitled to perfect representation. See Denton v. State, 945 S.W.2d 793, 796 (Tenn. Crim. App. 1996). As explained in Burns, 6 S.W.3d at 462, "[c]onduct that is unreasonable under the facts of one case may be perfectly reasonable under the facts of another."

## I.  Ineffective Assistance of Counsel

### A.  Mental Evaluation/Substance Abuse

The petitioner argues that "[c]ounsel . . . failed his legal obligation to his client to conduct said mental evaluation as upheld in United States v. DeCoster, 487 F.2d 1197 (D.C. Cir. 1973[)]." DeCoster set forth standards for evaluating the effectiveness of the assistance of counsel which were later cited with approval by our supreme court in Baxter v. Rose, 523 S.W.2d 930 (Tenn. 1975). The petitioner apparently relies on DeCoster's statement that "[c]ounsel should also be concerned with the accused's right to be released from custody pending trial, and be prepared, *where appropriate*, to make motions for a pre-trial psychiatric examination or for the suppression of evidence." Baxter, 523 S.W.2d at 933 (quoting DeCoster, 487 F.2d. at 1203-04) (emphasis added).

In support of this allegation, the petitioner offers the conclusory statement that "had it not been for said Counsel's ineffectiveness, the Petitioner would have had a different result (verdict), and may have been deemed incompetent to stand trial." However, he did not present any evidence at the post-conviction evidentiary hearing to suggest that a mental evaluation was warranted or what the results of such an examination would have been. Rather, trial counsel testified that the petitioner was very active in his defense, and counsel saw no reason to question the petitioner's competence to stand trial. As to this claim, the post-conviction court found that "[trial] [c]ounsel testified that petitioner could assist in his defense, and he saw no need to have him evaluated. Petitioner admits he was able to confer with counsel. Petitioner has failed to show prejudice in this regard." The record supports this determination of the post-conviction court.

## B. Possible Trial Defenses

In his appellate brief, the petitioner argues that trial counsel was ineffective in not informing him of any possible defenses to be used at trial. Additionally, he alleges that trial counsel did not properly inform him of all case proceedings and met with him for a total of only fifteen minutes in preparation for trial. As we have noted previously, the petitioner did not identify at the evidentiary hearing the defenses he believed would have benefitted him at trial or explain why this would have been the case.

We conclude that the petitioner has waived this argument by failing to support it with argument or appropriate references to the record. See Tenn. Ct. Crim. App. R. 10(b) ("Issues which are not supported by argument, citation to authorities, or appropriate references to the record will be treated as waived in this court."). The petitioner has not made sufficient arguments or supplied citations or references to the record to support these claims.

## C. Inadequate Investigation and Cross-Examination

The petitioner avers that trial counsel "may not have investigated the facts of the case properly by failing to interview any potential witnesses on behalf of petitioner and failing to properly cross-examine certain witnesses called by the State[.]" He claims that he provided trial counsel with the names of witnesses who were never contacted and subpoenaed, resulting in a weak defense. According to the petitioner, there is a "strong indication" that the outcome of the trial would have been different if these witnesses had been properly employed in his defense.

At the evidentiary hearing, the petitioner produced none of the favorable witnesses whom counsel purportedly ignored and did not explain what was improper about trial counsel's cross-examination of the State's witnesses or even identify those witnesses who, in his view, should have been cross-examined more effectively. The record supports the determination of the post-conviction court that the petitioner failed in his proof as to this claim.

## D. Jailhouse Audiotapes

At trial, the State introduced audio recordings of a jailhouse phone call between the petitioner and his mother. While claiming at the evidentiary hearing that his was not one of the voices heard in the telephone calls, the petitioner did not opine, as we understand, whether one of the voices on the tape was that of his mother and did not call her to testify at the hearing in this regard. Further, the petitioner did not explain what his legal theory would have been to suppress the tapes since, accepting his explanation, the tapes were of conversations to which he was not a party. As we understand it, the petitioner also argues that counsel was ineffective because he "allowed the [S]tate to play the detrimental conversations during the trial to the jury" but does not explain what additional actions counsel could have taken to prevent this from occurring.

-10-

At the hearing, the petitioner acknowledged that counsel, in fact, had filed a pretrial motion to suppress the tapes:

> [THE STATE]: Okay. He [the petitioner] also indicates that you never filed pretrial motions to suppress [the jailhouse audiotapes], but that's not true, is it?
>
> [TRIAL COUNSEL]: Yes, we filed motions to suppress those tapes --
>
> [POST-CONVICTION COUNSEL]: Your Honor, we would agree that that can be stricken from the petition, after further research. I don't know if that was changed in the amended petition, but that is not true. We would stipulate that motions were filed, pretrial motions and motions to suppress were filed.

The petitioner's brief claims only that "[c]ounsel neglected to file Interlocutory Appeals, and thus damaging statements were allowed in the State's case." He does not evaluate the likelihood that an interlocutory appeal would have been successful, nor does he explain how the "damaging statements" prejudiced his defense. Accordingly, we agree with the State that the petitioner has waived this claim by failing to support it with argument or appropriate citations to authority. Tenn. Ct. Crim. App. R. 10(b).

### E. Transcripts of Jailhouse Audiotapes

The petitioner asserts that counsel allowed the State to make transcripts of the jailhouse tapes without properly reviewing them or allowing the petitioner to review them and asks whether counsel was ineffective in failing to prepare his own transcript of the tapes. As to this, he claims that "[a]llowing the prosecution to present a projection of what they transcribed the tapes to be was enormously prejudicial to Petitioner's outcome." However, he does not allege that the State's transcription is inaccurate. He also "submits that had his Counsel investigated the log handbook at the facility Petitioner was housed at, it would have revealed that he was actually in D pod, not C pod where the purported call was made from." Yet, he stops short of claiming that the voice on the audiotapes is not his. Absent even a bare allegation that the State's transcript is inaccurate, or that the voice on the tape is not his, we conclude that the record supports the post-conviction court's determination in this regard.

### F. Inadequate Investigation--Medical Records

The petitioner claims that trial counsel's investigation of the victim's medical records was insufficient and challenges counsel's use of the pathologist hired to independently examine those records. He argues that although the pathologist agreed with the autopsy report that blunt force trauma was the cause of death, further investigation was warranted because the pathologist noted that the autopsy did not specify the nature of the blunt force trauma. As we understand, the petitioner argues that trial counsel should have called the pathologist to testify at trial and used his uncertainty about the nature of the trauma to develop some alternative theory of defense. The petitioner also

claims that counsel should have investigated more extensively the records of the medical personnel who treated the victim at the scene of the attack. The State responds that the petitioner's failure to offer medical proof to corroborate his claim is fatal.

As we previously have set out, the petitioner did not present the autopsy report or other medical records of the victim at the evidentiary hearing, nor did he call the pathologist to testify; thus, he is not entitled to relief on this issue. See generally, Denton, 945 S.W.2d at 802-03 (failure to call favorable witness); Floyd "Butch" Webb v. State, No. E2006-02352-CCA-R3-PC, 2007 WL 2570201, at *14 (Tenn. Crim. App. Sept. 7, 2007) (failure to introduce medical records). The post-conviction court found that the petitioner failed to show that he was prejudiced by counsel's failure to provide the pathologist with additional records. The record supports this determination.

### G. Inadequate Communication – Sentencing

The petitioner argues briefly and without any amplification that trial counsel never informed him of the range of sentencing to which he would be subjected, or whether he would be eligible for parole. He contends that counsel did not discuss plea options with him or explain the lesser-included offenses, the consequences of going to trial, or the punishments that a conviction would carry. He neither explained nor presented any proof at the hearing as to how he would have benefitted had counsel taken these actions. The State argues that the petitioner has waived this issue for failing to cite to authority or the record. Tenn. Ct. Crim. App. R. 10(b). We concur.

### H. Inadequate Investigation – Criminal Histories of State's Witnesses

The petitioner asserts trial counsel did not investigate adequately the criminal histories of the State's witnesses for purposes of impeaching their credibility. He also appears to argue that counsel failed to investigate or subpoena favorable defense witnesses provided to him by the petitioner. The State contends that the petitioner is not entitled to relief because he failed to prove the criminal history of any of the State's witnesses or demonstrate that counsel's refusal to investigate these histories prejudiced his defense.

Both of the petitioner's arguments in this regard are foreclosed by Denton and Black. At the evidentiary hearing, the petitioner introduced neither proof of the criminal history of any State witness nor favorable testimony of any witness whom trial counsel failed to call at trial. The post-conviction court correctly held that the petitioner did not establish that counsel's allegedly inadequate investigation prejudiced his defense.

### I. Inadequate Communication

Finally, the petitioner alleges that trial counsel did not keep him adequately apprised of important developments in his case. He claims that counsel only met with him for a total of fifteen minutes and that he had no clear understanding of the proceedings and could not assist in his own defense. The State argues that the petitioner has waived this argument; we agree.

The petitioner cites no authority in support of this claim and makes no reference to the trial record. In fact, the record belies the petitioner's allegation. Trial counsel testified that he spent over eighty hours on the petitioner's case, including approximately 5.3 hours meeting with the petitioner. Trial counsel's time sheets for the case as an exhibit to the record. The post-conviction court held that the petitioner did not establish that counsel failed to adequately communicate or confer with him, and the record supports this determination.

## **CONCLUSION**

For the foregoing reasons, the order of the post-conviction court is affirmed.

_____
ALAN E. GLENN, JUDGE